UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
Trans-Pro Logistic, Inc.,

          Plaintiff,  05-CV-1759
              (CPS)(CLP)

   - against -

              MEMORANDUM
              OPINION AND
Coby Electronics Corp.,       ORDER

          Defendants.

-------------------------------------X

Coby Electronics Corp.,

    Third-Party Plaintiff,

   - against -

CSX Intermodal, Inc. and
Yellowstone Freight, Inc.

    Third-Party Defendants.

-------------------------------------X

SIFTON, Senior Judge.

  Plaintiff Trans-Pro Logistics, Inc. ("Trans-Pro") commenced this action against defendant Coby Electronics Corp. ("Coby") claiming breach of contract arising out of defendant's alleged failure to remit payment to plaintiff for shipping services rendered on behalf of defendant. Defendant filed counterclaims against plaintiff as well as a third-party complaint against third-party defendants CSX Intermodal, Inc. ("CSXI") and Yellowstone Freight, Inc. ("Yellowstone") alleging that shipments

of goods were lost in the course of transportation provided by plaintiff and third-party defendants.[1] Presently before this Court is third-party defendant CSXI's motion for summary judgment dismissing the third-party complaint against it. For the reasons set forth below, third-party defendant CSXI's motion is denied.

**Background**

The following facts are drawn from the parties' papers submitted in connection with this motion. Disputes are noted.

Plaintiff Trans-Pro is a corporation organized and existing under the laws of Quebec Province, Canada. Amended Complaint ¶ 3. Plaintiff is licensed by the Surface Transportation Board as a transport broker[2] and arranges for the transportation of commercial goods on behalf of shippers in the United States and Canada. *Id.* ¶ 4; Deposition of Peter Boyko ("Boyko Dep.") at 14-16. According to plaintiff, and disputed by defendant, it does not employ drivers or own trucks that are used for the transportation of goods. Deposition of Denis Charbonneau ("Charbonneau Dep.") at 42; Fax from Trans-Pro Logistics, dated

---

[1] Defendant Coby's third-party claim against third-party defendant Yellowstone concerns a shipment of goods that was transported in November 2004. I do not address defendant's claims against third-party defendant Yellowstone since their dealings are not at issue for purposes of this motion.

[2] Under 49 U.S.C. § 13102 "[t]he term 'broker' means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

November 30, 2004, Coby Exhibit C.

Defendant and third-party plaintiff Coby is a corporation organized and existing under the laws of New York State, with its principal place of business in Queens, New York. Amended Complaint ¶ 6. Defendant and third-party plaintiff Coby is a wholesaler that imports and sells consumer electronics to retailers. *Id.* ¶ 7.

On September 1, 2004, plaintiff Trans-Pro and defendant Coby entered into an oral contract for the transportation and delivery of a shipment of goods from defendant Coby's warehouse in California to Interbond Corp. d/b/a Brands Mart ("Brands Mart") in Hollywood, Florida. Coby Amended Answer ¶ 34. The parties dispute whether plaintiff was to transport the goods itself or arrange for the transportation of the goods by other companies.

According to plaintiff, defendant requested plaintiff to arrange for rail transportation of the goods, and plaintiff agreed to arrange for the shipment of goods by consigning the shipment to various carriers[3] for transport and delivery on

---

[3] Under 49 U.S.C. § 13102, "[t]he term 'carrier' means a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). A motor carrier is "a person providing commercial motor vehicle . . . transportation for compensation." 49 U.S.C. § 13102(14).

A freight forwarder is:

> a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business--
> (A) assembles and consolidates, or provides for assembling and

defendant's behalf. Deposition of Jason Leithead ("Leithead Dep.") at 115-16, 123-25. Defendant states that plaintiff held itself out as a carrier and that defendant hired plaintiff to transport the goods itself. Declaration of Kevin Gu ("Gu Decl.") ¶¶ 3,6; Deposition of Tiffany Lin ("Lin Dep.") at 44, 99, Coby Exhibit B; Deposition of Kevin Gu ("Gu Dep.") at 40, 99, Coby Exhibit A. Defendant states that it did not authorize plaintiff to hire other companies to transport the shipment of goods. Gu Decl. ¶¶ 4,6.

Thereafter, plaintiff hired TRT Carriers ("TRT") to arrange for the transportation of defendant's shipment. Leithead Dep. 117-18. According to third-party defendant CSXI, and disputed by defendant Coby, TRT is a division of the company NYK Logistics. Plaintiff Trans-Pro hired TRT to arrange for the transportation of defendant's shipment because NYK Logistics had a low-cost rate agreement with third-party defendant CSXI. *Id.* Plaintiff states, and defendant disputes, that it informed defendant that TRT's trucks would pick up the goods from defendant's warehouse. Leithead Dep. at 125-126. TRT in turn hired third-party defendant CSXI to arrange for the shipment of defendant's goods.

---

consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;
(B) assumes responsibility for the transportation from the place of receipt to the place of destination; and
(C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.

49 U.S.C. § 13102(8).

Declaration of Joseph McCauley ("McCauley Decl.") ¶ 6.

Third-party defendant CSXI is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Jacksonville, Florida. Third-Party Complaint ¶ 3. Third-party defendant CSXI calls itself a "shipper's agent" and arranges transportation by rail and motor on behalf of its customers. McCauley Decl. ¶ 7.

The agreement between TRT and third-party defendant CSXI was made pursuant to the terms of the CSXI Service Directory No. 1 ("Service Directory"), effective August 15, 2004. McCauley Decl. ¶ 6. The Service Directory provides the terms for filing a claim against CSXI for lost or damaged cargo. Service Directory Item 90, CSXI Exhibit B. It requires shippers to inform CSXI of an alleged shortage within 24 hours of delivery so that CSXI may inspect the shipment and stipulates that failure to do so serves as a release from liability. *Id.* The Service Directory requires all claims to be made in writing within eight months from the date of the delivery and also stipulates that if the shipper disputes the denial of a claim, the parties will agree to participate in mediation. *Id.* If mediation is unsuccessful, the shipper may file legal proceedings within six months of receiving the denial notice in Jacksonville, Florida, or the point of origin or destination of the shipment arranged by CSXI. *Id.*

Third-party defendant CSXI arranged for American Road Line,

Inc. ("ARL"), an independent motor carrier, to transport the shipment from defendant Coby's warehouse to Union Pacific Railways. Union Pacific Railways was contracted to ship the goods to Chicago, Illinois, where the goods were to be delivered to CSX Transportation, Inc. ("CSXT"), which was to provide rail transportation to Jacksonville, Florida. Upon arrival in Jacksonville, Florida, the goods were to be delivered to Florida East Coast for rail transportation to Dade County, Florida. An ARL truck would then pick up the goods upon arrival in Dade County and deliver them to Brands Mart. McCauley Decl. ¶ 9.

On September 1, 2004, a shipment consisting of 1290 cartons, containing consumer electronics products, left defendant's warehouse. Defendant loaded its shipment into a container and then sealed the cargo within the container with a security seal. September 1, 2004, Service Verification Report, CSXI Exhibit A; September 1, 2004 Coby Bill of Lading, CSXI Exhibit A.

On September 17, 2004, ARL delivered the shipment to Brands Mart. September 17, 2004 ARL Bill of Lading, CSXI Exhibit A. Brands Mart signed the bill of lading on the line next to the statement "SEAL INTACT/RECEIVED BY." *Id.* When Brands Mart opened the shipment it discovered that 55 cartons, containing $81,427.03 worth of goods, were missing from the shipment and noted the shortage on the delivery receipt. Lin Dep. at 160; NYK Logistics Claim Letter, CSXI Exhibit A; Gu Dep. at 54-55.

Thereafter, defendant learned about the missing goods, informed plaintiff of the loss and filed a claim with plaintiff. Leithead Dep. at 133, 147. Defendant states that it was never informed prior to the alleged loss of goods that plaintiff intended to hire another entity to transport the shipment. Gu Decl. ¶¶ 4,6. Third-party defendant CSXI states that it was not informed of the alleged loss within 24 hours of delivery. McCauley Decl. ¶ 14.

On October 27, 2004, NYK Logistics filed a claim for the missing goods with third-party defendant CSXI. NYK Logistics Claim Letter, CSXI Exhibit A. On December 6, 2004, third-party defendant CSXI denied the claim because the seal was intact at the time of delivery. Declination Letter, CSXI Exhibit A.

**Discussion**

*Summary Judgment Standard*

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Id*.

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

*Goods Transported in Interstate Commerce*

Pursuant to 49 U.S.C. § 14706, freight forwarders and carriers, but not brokers, may be held liable for goods lost while transported in interstate commerce. 49 U.S.C. § 14706. Brokers may be held liable under state law causes of action. *See Electroplated Metal Solutions, Inc. v. American Servs., Inc.*, No. 07-CV-409, 2008 WL 345617, *2 (N.D.Ill. 2008); *Hewlett-Packard

*Co. v. Brother's Trucking Enters., Inc.*, 373 F.Supp.2d 1349, 1352 (S.D.Fla. 2005). "Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." *Hewlett-Packard Co.*, 373 F.Supp.2d at 1352.

A shipper who uses the services of an intermediary to arrange for the transportation of its goods is bound by the terms of the contract between the intermediary and the carrier. *Great Northern Ry. Co. v. O'Connor*, 232 U.S. 508, 514 (1914)(addressing contract between freight forwarder and rail carrier). A carrier has the right to assume that the entity presenting the goods for shipment has the authority to ship them and agree upon the terms of the shipment and if there is a violation of the shipper's "instructions, resulting in damage, the plaintiff has her remedy against that [intermediary]." *Id.* at 515; *see also Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14, 34 (2004)(applying *Great Northern* to a maritime action); *Burnell v. Butler Moving & Storage*, 826 F.Supp. 65, 68-69 (N.D.N.Y. 1993)(applying *Great Northern* and holding that carrier had the right to assume that a freight forwarder had the authority to agree to the terms of the shipment with a motor carrier); *Nippon Fire & Marine Co., Ltd. v. Skyway Freight Systems, Inc.*, 235 F.3d 53, 61 (2d Cir. 2000)(shipper who contracted with an air carrier for the shipment of goods was bound by the terms of the contract that air carrier

subsequently entered into with subcontracted secondary air carriers).

*Third-Party Defendant CSXI's Claims*

Third-party defendant CSXI argues that the third-party complaint against it should be dismissed because defendant and third-party plaintiff Coby failed to abide by the terms of the Service Directory.[4] Relying on the Supreme Court's holding in *Great Northern*, and *Kirby*, as well as the Second Circuit's decision in *Nippon,* third-party defendant CSXI argues that defendant and third-party plaintiff Coby was bound by the terms of the Service Directory, because plaintiff was acting on defendant and third-party plaintiff Coby's behalf when plaintiff contracted with TRT which in turn contracted with third-party defendant CSXI for the shipment of the goods in question.[5]

In *Great Northern*, *Kirby*, and *Nippon*, the shippers disputed

---

[4] Specifically, third-party defendant CSXI argues that it has been released of liability for the alleged loss of goods because: (1) it was not informed of the alleged shortage within 24 hours of delivery as required by the terms of the Service Directory; (2) defendant and third-party plaintiff Coby failed to file suit within six months of the denial of the claim as required by the Service Directory; (3) defendant and third-party plaintiff Coby failed to pursue mediation prior to filing suit as required by the Service Directory; and (4) defendant and third-party plaintiff Coby failed to file suit pursuant to the terms of the Service Directory's forum selection clause.

[5] In its initial moving papers, third-party defendant appeared to argue that summary judgment should be granted in its favor because third-party plaintiff had failed to establish a triable issue of fact with respect to the alleged loss of goods. However, in its reply papers, third-party defendant states that it is not moving for summary judgment on this ground, but rather included a discussion on the loss of goods to demonstrate that it had valid reasons for denying third-party plaintiff's claim. Accordingly, I need not and do not consider the issue.

the liability limitations that their freight forwarders and/or carriers entered into with downstream carriers. In all three cases, the courts determined that a rule permitting carriers to distinguish between shippers and intermediaries would potentially interfere with the obligation of carriers not to discriminate. *Nippon,* 235 F.3d at 61; *Great Northern*, 232 U.S. 514; *Kirby*, 543 U.S. at 35. In *Kirby*, the Supreme Court also noted that the task of finding out whether carriers were dealing with freight forwarders or directly with shippers would be costly or impossible because goods change hands many times in the course of intermodal transport.

In this action, third-party defendant CSXI is a shipper's agent, not a carrier, and knew that defendant and third-party plaintiff Coby was the shipper and not a freight forwarder at the time that it contracted with TRT to arrange for the shipment of the goods in question. Accordingly, the holdings of the courts in *Great Northern, Kirby,* and *Nippon* are not controlling with respect to the disputed issues in this action.

The parties in the instant action dispute whether plaintiff was hired to act as defendant's carrier or broker and whether plaintiff had the authority to act as defendant's agent for purposes of negotiating subsequent transactions related to the shipment of goods in question. Because there are material factual disputes about the terms of the contract between

plaintiff and defendant, a jury must first determine their relationship before addressing whether defendant and third-party plaintiff Coby was bound by the terms of the Service Directory.

Accordingly, third-party defendant CSXI's motion for summary judgment is denied.

## Conclusion

For the reasons set forth above, third-party defendant CSXI's motion for summary judgment is denied. The Clerk is directed to transmit a copy of the within to the parties and the magistrate judge.

SO ORDERED.

Dated:    Brooklyn, NY

          September 2, 2008



          By:    /s/ Charles P. Sifton (electronically signed)
                 United States District Judge