UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
Trans-Pro Logistic, Inc.,

                                     Plaintiff,

        - against -

Coby Electronics Corp.,

                                     Defendant.

05-CV-1759
(CPS)(CLP)

MEMORANDUM
OPINION AND
ORDER

--------------------------------------X
Coby Electronics Corp.,

        Third-Party Plaintiff,

        - against -

CSX Intermodal, Inc. and
Yellowstone Freight, Inc.

        Third-Party Defendants.

--------------------------------------X

SIFTON, Senior Judge.

     Plaintiff Trans-Pro Logistics, Inc. ("Trans-Pro") commenced this action against defendant Coby Electronics Corp. ("Coby") claiming breach of contract arising out of defendant's alleged failure to remit payment to plaintiff for shipping services rendered on defendant's behalf. Defendant filed counterclaims against plaintiff as well as a third-party complaint against third-party defendants CSX Intermodal, Inc. ("CSXI") and Yellowstone Freight, Inc. ("Yellowstone") alleging that the relevant shipments of goods were lost in the course of

transportation provided the third-party defendants.[1]  Presently before this Court is third-party defendant CSXI's motion seeking reconsideration of this Court's ruling on September 3, 2008, denying third-party defendant CSXI's motion for summary judgment.  For the reasons set forth below, third-party defendant CSXI's motion is again denied.

### BACKGROUND

The following facts are drawn from the parties' papers submitted in connection with this motion.  Disputes are noted.

Plaintiff Trans-Pro is a corporation organized and existing under the laws of Quebec Province, Canada.  Am. Compl. ¶ 3.  Plaintiff is a licensed transport broker[2] and arranges for the transportation of commercial goods on behalf of shippers in the United States and Canada.  *Id.* ¶ 4; Deposition of Peter Boyko ("Boyko Dep.") at 14-16.  According to plaintiff, and disputed by defendant, it does not itself employ drivers or own trucks used for the transportation of goods.  Deposition of Denis Charbonneau ("Charbonneau Dep.") at 42;  Fax from Trans-Pro Logistics, dated

---

[1] Defendant Coby's third-party claim against third-party defendant Yellowstone concerns a shipment of goods that was transported in November 2004.  I do not address defendant's claims against third-party defendant Yellowstone since their dealings are not at issue for purposes of this motion.

[2] Under 49 U.S.C. § 13102 "[t]he term 'broker' means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

November 30, 2004, Coby Exhibit C.

Defendant and third-party plaintiff Coby is a corporation organized and existing under the laws of New York State, with its principal place of business in Queens. Am. Compl. ¶ 6. Defendant and third-party plaintiff Coby is a wholesaler that imports and sells consumer electronics to retailers. *Id.* ¶ 7.

On September 1, 2004, plaintiff Trans-Pro and defendant Coby entered into an oral contract for the transportation and delivery of a shipment of goods from defendant Coby's warehouse in California to Interbond Corp. d/b/a Brands Mart ("Brands Mart") in Hollywood, Florida. Coby Am. Answer ¶ 34. The parties dispute whether plaintiff was hired to transport the goods itself or to arrange for the transportation of the goods by others.

According to plaintiff, defendant requested plaintiff to arrange for rail transportation of the goods, and plaintiff agreed to arrange for the shipment of goods by consigning the shipment to various carriers[3] for transport and delivery on

---

[3] Under 49 U.S.C. § 13102, "[t]he term 'carrier' means a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). A motor carrier is "a person providing commercial motor vehicle . . . transportation for compensation." 49 U.S.C. § 13102(14).

A freight forwarder is:

> a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business--
> (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;
> (B) assumes responsibility for the transportation from the place

defendant's behalf. Deposition of Jason Leithead ("Leithead Dep.") at 115-16, 123-25. Defendant states that plaintiff held itself out as a carrier and that defendant hired plaintiff to transport the goods itself. Declaration of Kevin Gu ("Gu Decl.") ¶¶ 3,6; Deposition of Tiffany Lin ("Lin Dep.") at 44, 99, Coby Exhibit B; Deposition of Kevin Gu ("Gu Dep.") at 40, 99, Coby Exhibit A. Defendant states that it did not authorize plaintiff to hire other companies to transport the shipment of goods. Gu Decl. ¶¶ 4,6.

Thereafter, plaintiff hired TRT Carriers ("TRT") to arrange for the transportation of defendant's shipment. Leithead Dep. 117-18. According to third-party defendant CSXI, and disputed by defendant Coby, TRT is a division of a company called NYK Logistics. Plaintiff Trans-Pro hired TRT to arrange for the transportation of defendant's shipment because NYK Logistics had a low-cost rate agreement with third-party defendant CSXI. *Id.* Plaintiff states, and defendant disputes, that it informed defendant that TRT's trucks would pick up the goods from defendant's warehouse. Leithead Dep. at 125-126. TRT in turn hired third-party defendant CSXI to arrange for the shipment of defendant's goods. Declaration of Joseph McCauley ("McCauley

---

        of receipt to the place of destination; and
        (C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.

49 U.S.C. § 13102(8).

Decl.") ¶ 6.

Third-party defendant CSXI is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Jacksonville, Florida. Third-Party Compl. ¶ 3. Third-party defendant CSXI calls itself a "shipper's agent" and arranges transportation by rail and motor on behalf of its customers. McCauley Decl. ¶ 7.

The agreement between TRT and third-party defendant CSXI was made pursuant to the terms of the CSXI Service Directory No. 1 ("Service Directory"), effective August 15, 2004. McCauley Decl. ¶ 6. The Service Directory provides the terms for filing a claim against CSXI for lost or damaged cargo. Service Directory Item 90, CSXI Exhibit B. It requires shippers to inform CSXI of a shortage within 24 hours of delivery so that CSXI may inspect the shipment and states that failure to do so serves as a release from liability. *Id.* The Service Directory requires all claims to be made in writing within eight months from the date of the delivery and also states that if the shipper disputes the denial of a claim, the parties will participate in mediation. *Id.* If mediation is unsuccessful, the shipper may file legal proceedings within six months of receiving the denial notice in Jacksonville, Florida, or the point of origin or destination of the shipment arranged by CSXI. *Id.*

Third-party defendant CSXI arranged for American Road Line,

Inc. ("ARL"), an independent motor carrier, to transport the shipment from defendant Coby's warehouse to Union Pacific Railways. Union Pacific Railways contracted to ship the goods to Chicago, Illinois, where the goods were to be delivered to CSX Transportation, Inc. ("CSXT"), which was to provide rail transportation to Jacksonville, Florida. Upon arrival in Jacksonville, Florida, the goods were to be delivered to Florida East Coast for rail transportation to Dade County, Florida. An ARL truck would then pick up the goods upon arrival in Dade County and deliver them to Brands Mart. McCauley Decl. ¶ 9.

On September 1, 2004, a shipment consisting of 1290 cartons, containing consumer electronics products, left defendant's warehouse. Defendant loaded its shipment into a container and then sealed the cargo within the container with a security seal. September 1, 2004, Service Verification Report, CSXI Exhibit A; September 1, 2004 Coby Bill of Lading, CSXI Exhibit A.

On September 17, 2004, ARL delivered the shipment to Brands Mart. September 17, 2004 ARL Bill of Lading, CSXI Exhibit A. Brands Mart signed the bill of lading on the line next to the statement "SEAL INTACT/RECEIVED BY." *Id.* When Brands Mart opened the shipment it discovered that 55 cartons, containing $81,427.03 worth of goods, were missing from the shipment and noted the shortage on the delivery receipt. Lin Dep. at 160; NYK Logistics Claim Letter, CSXI Exhibit A; Gu Dep. at 54-55.

Thereafter, defendant learned about the missing goods, informed plaintiff of the loss and filed a claim with plaintiff. Leithead Dep. at 133, 147. Defendant states that it was never informed prior to the loss of goods that plaintiff intended to hire another entity to transport the shipment. Gu Decl. ¶¶ 4,6. Third-party defendant CSXI states that it was not informed of the alleged loss within 24 hours of delivery. McCauley Decl. ¶ 14.

On October 27, 2004, NYK Logistics filed a claim for the missing goods with third-party defendant CSXI. NYK Logistics Claim Letter, CSXI Exhibit A. On December 6, 2004, third-party defendant CSXI denied the claim because the seal was intact at the time of delivery. Declination Letter, CSXI Exhibit A.

On September 3, 2008, I denied third-party defendant CSXI's motion for summary judgment. For the reasons set forth below, third-party defendant's present motion for reconsideration is denied.

**DISCUSSION**

Standard for Motion for Reconsideration

A motion for reconsideration pursuant to either Rule 59(e) of the Federal Rules of Civil Procedure or Local Rule 6.3 will be granted if the moving party presents factual matters or controlling decisions the court overlooked that might materially

have influenced its decision.[4]  *Pereira v. Aetna Casualty and Surety Co. (In re Payroll Express Corp.)*, 921 F. Supp. 1121, 1123 (S.D.N.Y. 1996); *Violette v. Armonk Assocs., L.P.*, 823 F. Supp. 224, 226 (S.D.N.Y. 1993).  Reconsideration is also appropriate if there is an intervening change of controlling law, new evidence, or the need to correct a clear error or prevent manifest injustice.  *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983); *Casino, LLC v. M/V Royal Empress*, No. 98-CV-2333, 1998 WL 566772, at *1 (E.D.N.Y. Aug. 21, 1998).

Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered.  *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.*, 624 F.Supp. 747, 748 (S.D.N.Y. 1985).  In deciding a Local Rule 6.3 motion, the court will not allow a party to use the motion as a substitute for an appeal from a final judgment.  *See Morser v. A.T. & T. Information Systems*, 715 F.Supp. 516, 517 (S.D.N.Y. 1989); *Korwek v. Hunt*, 649 F.Supp. 1547, 1548 (S.D.N.Y. 1986).  Accordingly, a party in its motion for reconsideration

---

[4] Essentially the same standard is used to determine Rule 59(e) motions as motions under the Local Rule.  Rule 59(e) "does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment," *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004), and "district courts may alter or amend a judgment to correct a clear error of law or prevent manifest injustice." *Id.* (internal citations and quotations omitted); *see also Wood v. F.B.I.*, 432 F.3d 78, 85 n.4 (2d Cir. 2005) (affirming denial of Rule 59(e) motion where "district court did not commit error or a manifest injustice").  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

"may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, No. 86-CV-6447, 1989 WL 162315, at *3 (S.D.N.Y. Aug. 4, 1989).

Third-Party Defendant CSXI's Claims

Third-party defendant CSXI argues that it is entitled to reconsideration on the ground that I overlooked basic principles of agency law that underlie three cases cited in support of CSXI's summary judgment motion: *Great Northern Ry. Co. v. O'Connor*, 232 U.S. 508 (1914) (addressing contract between freight forwarder and rail carrier); *Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14 (2004) (applying *Great Northern* to maritime action); and *Nippon Fire & Maritime Co., Ltd. v. Skyway Freight Systems, Inc.*, 235 F.3d 53 (2d Cir. 2000) (shipper who contracted with air carrier for shipment of goods was bound by terms of contract that air carrier subsequently negotiated with secondary air carriers, even where shipper had not authorized primary air carrier to subcontract shipments). Specifically, third-party defendant CSXI asserts that plaintiff Trans-Pro had implied or apparent authority to arrange for the transportation of defendant and third-party plaintiff Coby's shipments, or in the alternative, that defendant and third-party plaintiff Coby's voluntary loading of its cargo onto the ARL truck for shipment constituted a ratification under agency law principles. As a

result, third-party defendant CSXI contends that no matter how the jury classifies the relationship between plaintiff Trans Pro and defendant and third-party plaintiff Coby in the primary dispute, defendant and third-party plaintiff Coby's claim against third-party defendant CSXI fails because the terms of the Service Directory, with which Coby did not comply, control.

As presented, third-party defendant CSXI's agency arguments are new to the record. I denied third-party defendant CSXI's summary judgment motion because its arguments were predicated upon a fact in dispute between plaintiff Trans-Pro and defendant and third-party plaintiff Coby: whether defendant and third-party plaintiff Coby hired plaintiff Trans-Pro as an intermediary charged with arranging for other companies to transport Coby's shipment of goods. On reconsideration, third-party defendant CSXI now argues that the legal relationship between plaintiff Trans-Pro and defendant and third-party plaintiff Coby is immaterial because plaintiff Trans-Pro and its agents either had the apparent authority to bind defendant and third-party plaintiff Coby to the Service Directory, or because defendant and third-party plaintiff Coby ratified the agreement between plaintiff's agent and third-party defendant CSXI. Third-party defendant CSXI's submissions on summary judgement were silent on the issues of implied authority, apparent authority and ratification. Accordingly, these arguments may not serve as the

basis of a motion for reconsideration. *See In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, Nos. 06 Civ. 643, 07 Civ. 8686, 07 Civ. 8688, 2008 WL 4962985, at *1 (S.D.N.Y. Nov. 20, 2008) ("A motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue") (citing *EEOC v. Fed. Express Corp.*, 268 F. Supp. 2d 192, 199 (E.D.N.Y. 2003)).

Even if I were to consider the above arguments, denial of CSXI's summary judgment motion would nevertheless be appropriate. Third-party defendant CSXI submits that its agency arguments are drawn from the "basic agency principles of law that are the underpinning of the transportation law cases cited in support of CSXI's motion for summary judgment," *i.e.*, the *Great Northern*, *Kirby*, and *Nippon* cases.

*Great Northern* and *Kirby* are easily disposed of. Both cases dealt with a situation in which the cargo owner, or shipper, contracted with an intermediary company to arrange for the transportation of its cargo. *Great Northern*, 232 U.S. at 509, 513-14; *Kirby*, 543 U.S. at 19. In both cases, the shipper knew that the intermediary company would not transport the shipper's cargo to its ultimate destination itself; rather, the intermediary company was hired to enter into secondary contracts with carriers to effect the cargo's transportation. Here, defendant and third-party plaintiff Coby claims that it hired

plaintiff Trans-Pro as a carrier, with the understanding that Trans-Pro itself would effect the transportation of Coby's cargo to its ultimate destination.  The issue in this case is whether defendant and third-party plaintiff Coby reasonably believed and relied on its belief that it had hired plaintiff Trans-Pro as a carrier charged with effecting the transport of Coby's cargo itself.

The *Nippon* case has more in common with the case at bar, but it is nevertheless also distinguishable.  As in this case, the shipper in *Nippon* entered into a contract with a carrier with the understanding that the carrier would itself effect the transportation of the shipper's cargo.  *Nippon*, 235 F.3d at 56, 61.  Unbeknownst to the shipper in *Nippon*, however, the primary carrier entered into secondary contracts with secondary carriers for the transport of the shipper's cargo.  The Second Circuit held in *Nippon* that the shipper was bound by the primary carrier's contracts with the secondary carriers, even though the shipper had no knowledge of the contracts and had given no authority to the primary carrier to enter into the contracts with the secondary carriers.  *Id.* at 62.  However, the court noted that the shipper's "expectations were in no way frustrated by [the primary carrier's] decision to subcontract its shipments, since the scope of the liability limitations agreed to between [the primary carrier] and its secondary carriers was exactly the

same as that agreed to between [the shipper] and [the primary carrier]." The court expressed "no view as to whether the shipper has 'any additional rights' against secondary carriers when the secondary carriers' shipping contracts contain *higher* damage limitations than the original agreement between the shipper and the primary carrier." *Id.* at 62 n.5 (emphasis in original).

This case presents the exception on which the Second Circuit expressed no view in *Nippon*. The nature and details of the oral agreement between third-party-plaintiff Coby and plaintiff Trans-Pro are in dispute, but there is no allegation that the limitations present in the Service Directory, upon which third-party defendant CSXI's contract with TRT was predicated, were included in the oral agreement between Coby and Trans-Pro. The Service Directory contains multiple provisions specifying the manner and time in which claims must be filed and received, and provides that a failure to abide by these terms results in the release of CSXI from liability. Because these terms, if binding on third-party plaintiff Coby, would bar relief to Coby, and because there is no allegation that some comparable notice provisions were included in the agreement between third-party plaintiff Coby and plaintiff Trans-Pro, the Service Directory contains "higher damage limitations" within the meaning of the

exception set forth in *Nippon*.[5]  Accordingly, the *Nippon* case is not dispositive of whether third-party plaintiff Coby may recover from third-party defendant CSXI.

Turning to third-party defendant CSXI's "basic agency principles," I consider whether plaintiff Trans-Pro had implied authority to make transportation arrangements on behalf of defendant and third-party plaintiff Coby.  "Implied authority may be viewed as actual authority given implicitly by a principal to his agent or as a kind of authority arising solely from the designation by the principal of a kind of agent who ordinarily possesses certain powers."  *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 149 (2d Cir. 1999) (internal citations and quotation marks omitted).  Accepting third-party-plaintiff Coby's assertion that it hired plaintiff Trans-Pro as a primary carrier with no authority to subcontract out Coby's shipments to others as true, Coby's designation of Trans-Pro as its carrier does not give rise to implied authority for Trans-Pro

---

[5] In addition to this important distinction, a further difference between this case and *Nippon* was previously identified in my Memorandum Opinon and Order on summary judgment:

> In this action, third-party defendant CSXI is a shipper's agent, not a carrier, and knew that defendant and third-party plaintiff Coby was the shipper and not a freight forwarder at the time that it contracted with TRT to arrange for the shipment of the goods in question.

*Trans-Pro Logistic, Inc. v. Coby Elec. Corp.*, No. 05-CV-1759, 2008 WL 4163992, at *4 (E.D.N.Y. Sept. 3, 2008).  Thus, unlike the secondary carriers in *Nippon*, who as common carriers, were entitled to assume "that one presenting goods for shipment either owns them or has authority to ship them," *Nippon*, 235 F.3d at 61 (internal citations omitted), third-party defendant CSXI, as a "shipper's agent," was entitled to no such presumption.

to enter into secondary contracts on Coby's behalf.

Third-party defendant CSXI also argues that plaintiff Trans-Pro had apparent authority to make transportation arrangements with others on behalf of third-party plaintiff Coby. Unlike implied authority, apparent authority "exists entirely apart from the principal's manifestations of consent to the agent." *F.T.C. v. Verity Intern., Ltd.*, 443 F.3d 48, 64 (2d Cir. 2006) (internal citations omitted). "Apparent authority . . . arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him." *Minskoff v. American Exp. Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996). "Apparent authority is . . . normally created through the words and conduct of the principal as they are interpreted by the third party, and cannot be established by the actions or representations of the agent." *Id.* (citing *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989)). "The existence of apparent authority is normally a question of fact, and therefore inappropriate for resolution on a motion for summary judgment." *Id.* In order to determine at this stage that third-party plaintiff Coby conferred apparent authority on plaintiff Trans-Pro to contract with TRT, which in turn had apparent authority to contract with third-party defendant CSXI, the record would have

to reflect in unmistakeable terms a manifestation of consent by third-party plaintiff Coby as principal to third-party defendant CSXI.

In this regard, third-party defendant CSXI contends that when third-party plaintiff Coby loaded its goods onto the ARL truck hired by CSXI, third-party plaintiff Coby manifested its consent to third-party defendant CSXI to have TRT act for it. However, this argument overlooks the fact that when third-party plaintiff Coby loaded its cargo onto the ARL truck, third-party defendant CSXI had already entered into its contract with TRT. Rather than relying upon any manifestation of consent by third-party plaintiff Coby in entering into the contract, the facts suggest that third-party defendant CSXI relied upon the actions of putative agent TRT. Actions or representations of a putative agent are insufficient to establish the putative agent's apparent authority upon which third-party defendant CSXI could have justifiably relied.[6]

Alternatively, third-party defendant CSXI argues that third-party plaintiff Coby's loading of its cargo on the ARL truck constituted a ratification of the contract between CSXI and plaintiff Trans-Pro. "Ratification [is] the subsequent adoption

---

[6] I recognize that apparent authority can "derive . . . from the putative agent's position, when justified by ordinary expectations and habits." *F.T.C. v. Verity Intern., Ltd.* 443 F.3d 48, 64 (2d Cir. 2006). However, whether apparent authority arose in this way in this case involves an inquiry into disputed facts, precluding a finding of apparent authority as a matter of law at the summary judgment stage.

and affirmance by one person of an act which another, without authority, has previously assumed to do for him while purportedly acting as his agent." *Leviten v. Bickley, Mandeville & Wimple,* 35 F.2d 825, 827 (2d Cir. 1929); *see also* Hamm v. U.S., 483 F.3d 135, 140 (2d Cir. 2007). Ratification "must be performed with full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language." *Chem. Bank v. Affiliated FM Ins. Co.*, 169 F.3d 121, 128 (2nd Cir. 1999), *vacated on other grounds,* 196 F.3d 373 (2d Cir. 1999) (citing *Holm v. C.M.P. Sheet Metal, Inc*., 89 A.D.2d 229, 455 N.Y.S.2d 429, 432 (1982); Restatement (Second) of Agency §§ 91, 93). "The intent can be implied from knowledge of the principal coupled with a failure to timely repudiate, where the party seeking a finding of ratification has in some way relied upon the principal's silence or where the effect of the contract depends upon future events." *Monarch Ins. Co. of Ohio v. Insurance Co. of Ireland Ltd.*, 835 F.2d 32, 36 (2d Cir. 1987) (internal citations omitted).

The record here does not establish, as a matter of law, that third-party plaintiff Coby ratified plaintiff Trans-Pro's shipping arrangements when it loaded its cargo onto the trucks hired by third-party defendant CSXI. Whether third-party plaintiff Coby had full knowledge of the material facts relating

to plaintiff Trans-Pro's transportation arrangements is a disputed issue of fact. Accordingly, whether defendant and third-party plaintiff Coby ratified plaintiff Trans-Pro's downstream contracts cannot be decided as a matter of summary judgment.

## CONCLUSION

For the reasons set forth above, third-party defendant CSXI's motion for reconsideration is denied. The Clerk is directed to transmit a copy of the within to the parties and the magistrate judge.

SO ORDERED.

Dated:     Brooklyn, NY
           January 6, 2009

                 By: /s/ Charles P. Sifton (electronically signed)
                 United States District Judge